## HASSE *v.* BIELEFELD, TREASURER, ETC.

[No. 24,926.   Filed February 5, 1926.]

1. EVIDENCE.—*Supreme Court knows that in 1922 all property in the state subject to taxation was assessed for that purpose.* —The Supreme Court knows, from common knowledge, that in 1922 all property in the state subject to taxation was assessed for taxation.   p. 503.

2. TAXATION.—*Courts must assume that tax assessment of 1922 was made according to requirements of the statute and was uniform, measured by its true cash value.*—The courts must assume that the assessment of property for taxes in 1922 was made according to the prescribed requirements of the tax law of 1919 (§14032 *et seq.* Burns 1926) and all real estate throughout the state was assessed with proper uniformity, based on the true cash value thereof.   p. 503.

3. STATUTES.—*Proviso must be read and considered in connection with the section of which it is a part and the other sections of the law.*—A proviso in a section of a statute must be read and considered in connection with the section of which it is a part and the other sections of the law.   p. 504.

4. TAXATION.—*A state-wide consideration of land values was intended before State Board of Tax Commissioners ordered reassessment of real estate in any taxing unit.*—The proviso to §152 of the tax law of 1919 (Acts 1919 p. 198, 281, §14191 Burns 1926) authorizing the State Board of Tax Commissioners to have real estate assessed oftener than every four years contemplates state-wide consideration of land values before ordering a reassessment in any taxing unit, the legislature having in mind war values then and theretofore prevailing, and the uncertain effect on land values of a reconstruction period following'the war.   p. 504.

5. TAXATION.—*Jurisdiction of State Board of Tax Commissioners is limited by statutory regulations.*—While the State Board of Tax Commissioners is one of the instrumentalities of the state charged with the duty of determining uniformity and equality of assessment, its jurisdiction is circumscribed by statutory regulations.   p. 505.

6. STATUTES.—*Proviso should be strictly construed and limited to objects fairly within its terms.*—A proviso in a statute is

to be strictly construed and limited to the objects fairly within its terms.   p. 505.

7. TAXATION.—*Word "maintain" in §152 of tax law of 1919 (Acts 1919 p. 198, 282, §14191 Burns 1926) construed not to authorize local reassessments without consideration of existing assessment for entire state.*—The word "maintain" in the proviso to §152 of the tax law of 1919 (Acts 1919 p. 198, 282, §14191 Burns 1926) was used in its ordinary and generally-accepted sense of holding or preserving in an existing state or condition, and does not authorize a reassessment of the real estate in a single township, city or county, or of an individual, without reference to a state-wide revision of the existing assessment.   p. 505.

From Lake Superior Court; *Maurice E. Crites,* Judge.

Suit by William Hasse against Walter F. Bielefeld, as treasurer of the city of Hammond.   From a judgment for defendant, the plaintiff appeals.   *Reversed.*

*Bomberger, Peters & Morthland,* for appellant.

*McMahon & Conroy, C. B. Tinkham* and *Joseph E. Brown,* for appellee.

MYERS, J.—Suit by appellant to enjoin appellee as city treasurer of the city of Hammond from collecting certain city taxes resulting from an increased assessment of his real estate as of March 1, 1924.   From a judgment in favor of appellee for costs, appellant prosecuted this appeal and has assigned as error the overruling of his motion for a new trial, wherein he asserts that the decision of the court was not sustained by sufficient evidence and was contrary to law.

While both appellant and appellee have submitted briefs and orally argued this case upon its merits, yet the brief of appellee suggests certain technical reasons which, if sustained, would avoid a decision of the real question sought to be presented.   At the time of making the oral argument, both sides orally joined in a request that we consider and decide this case aside from

technicalities, for the reason that the leading question is one of general public concern which, if decided, will result in the disposition of a number of cases now pending in the court below. Considering the statements of counsel, and from an examination of the record at bar, we are convinced that the public interests will best be subserved by granting this request.

Upon a careful examination of the record at bar, we have reached the conclusion that the dominating question for decision involves the validity of an order of the state tax board for the reassessment of real estate in North township, Lake county, in the year 1924. A brief recital of circumstances which were obviously the potent factor in bringing about the challenged order, together with the action thereon and the result thereof, may serve for a better understanding of this controversy.

On January 19, 1924, at a special session of the State Board of Tax Commissioners, the school board of Hammond filed a written petition asking for a reassessment of real estate in the city of Hammond in 1924 for taxes payable in 1925. The petition purported to give the assessed valuation of all property in the city of Hammond, and the true cash value of such property, together with other facts tending to show the urgent necessity for additional revenue for school purposes.

On January 23, 1924, at a special session of the state board, it was decided "to inquire into the equality of assessments in North township and the several cities and towns therein as well as in the city of Hammond," and, for that purpose, written notice was ordered and given by posting to all taxpayers to appear at a place stated on February 7, 1924, and show cause why a reassessment of the real estate of North township should not be ordered for the purpose of "maintaining an equitable and just valuation of real estate" in that county.

On February 4, 1924, P. A. Parks and others, of the city of East Chicago, filed with the state board a petition asking that the real estate in that city be reassessed in order to provide an increased revenue to meet the running expenses of the city, and enable the city to purchase a privately owned water company engaged in furnishing a large portion of the city with water. This petition and that of the school board were consolidated.

On February 7, 1924, at the city of Hammond, pursuant to notice theretofore given, the state board heard evidence relative to the question of ordering a *reassessment of the real estate in North township,* and, on March 1, 1924, being sufficiently advised, found, "that it is necessary, in order to maintain an equitable and just valuation and equalization, that all real property and improvements in said North township, Lake county, Indiana, should be reassessed in the year 1924 as provided in §152, ch. 59, of the act concerning taxation, approved March 11, 1919." Thereupon, the order: "It is therefore ordered by the State Board of Tax Commissioners of Indiana that the assessor of North township, Lake county, Indiana, assess for taxation each parcel of real estate, with the improvements thereon, give the owner due notice of the amount of such assessment, and make return to the auditor of his county with other assessments, as provided by law for the reassessment of real estate and improvements in years in which all real estate is to be assessed."

The North township assessor, as directed by the foregoing order, made what might be properly termed a general observation of the 100,000 separate pieces of real estate and improvements in North township, including appellant's real estate and improvements in the city of Hammond in 1922 valued at $14,750 and revalued as of March 1, 1924, at $28,000. However, the township assessor stated that he reassessed the real

estate and improvements of his township by lowering some and raising some, so that "it constituted a fair and equitable assessment of the property located in North township on March 1, 1924." It is further shown that the additions of value on the revaluation were limited to the real estate of appellant and to that of between 200 and 300 others, selected by the assessor, situated in the business district of Hammond on State and Hohman streets, and a comparatively small residential district of that city in the immediate vicinity of the latter street. It further appears that there was a substantial increase in real estate values between March 1, 1922, and March 1, 1924, in other sections and taxing units of other named cities in Lake county and other named cities in Indiana, during the same period without any effort by either the state or local authorities to revalue the same. That appellant, before beginning this suit, tendered to appellee, as city treasurer, all taxes levied against him and his real estate for the year 1924, according to the 1922 value fixed thereon, which taxes so tendered by appellant, appellee, as city treasurer, refused to accept, and the same was brought into court for his use and benefit.

Among the contentions of appellant, our attention is drawn to the insistence that the action of the township assessor and other assessing authorities in revaluing his lands and improvements for taxes in the year 1924 was wholly void and without authority in law; that it was an unlawful and unjust discrimination among taxpayers, resulting in inequality and lack of uniformity of assessment and taxation.

It is apparent from the foregoing recitals that the order for reassessment of the real estate in North township, Lake county, was made solely for the purpose of increasing the school revenues of the school city of Hammond. That this school city was greatly in need

of additional funds for the construction of new buildings and other necessary expenses must be conceded, but notwithstanding this exigency, it does not prove lack of uniformity or just valuation, for but one valuation for all purposes is allowed. No one is claiming that the real estate of North township or of the city of Hammand is not bearing its equal proportion of the burdens essential to the administration of all governmental affairs.

The state board points to §152 of the tax law of 1919, (Acts 1919 p. 198) for its authority to issue the above order. This section provides that, "The first assessment of the real estate made in pursuance with the provisions of this act, shall be made in the year 1919, and a like assessment shall be made in 1922 and every four years thereafter, at the time personal property is assessed, and by the same person or persons,  *  *  *; Provided, however, That if in the discretion of the state board of tax commissioners it shall be deemed necessary, in order to maintain an equitable and just valuation, that real estate be assessed oftener than every four years, then the state board of tax commissioners shall have the power and authority to order a reassessment of real estate in any taxing unit or units or of any individual owning real estate,  *  *  *; and that the word 'unit' as used in this section shall be held to include and mean 'state,' 'county,' 'township,' 'city' or 'town.'" We are not at this time concerned with other provisions of this section relative to the assessment of omitted property, new improvements, etc.

We know, from common knowledge, that in the year 1922 all property in this state subject to taxation was assessed. At that time, all of the machinery of the state for raising public revenue by taxation was brought into action for the sole purpose of applying the legislative will as expressed in the tax law

of 1919. We must assume that the assessment of 1922 was completed in all respects according to legislative direction, and, in so far as human wisdom could discern, real estate throughout the state, including North township, received the official final stamp of uniformity and equality of assessment, measured by the true cash value standard.

But for the proviso in §152, *supra,* there would be no semblance of authority for the order for reassessment of the real estate of North township in 1924. Directing our attention to that proviso, which must be read and considered in connection with the section of which it is a part, and in the light reflected by other sections of the 1919 enactment, some of which have been construed by this court in *Fesler, Aud.,* v. *Bosson* (1920), 189 Ind. 484, 128 N. E. 145, it is perfectly clear that the legislature, in adding this proviso, had in mind war values then and theretofore prevailing and the uncertain effect of a reconstruction period on land values after 1922, and prior to 1926. In order to meet a possible general emergency for a readjustment of future land values, and especially within the four year period, the legislature submitted that question to the sound discretion of the state board. With that viewpoint of the legislature in mind, it cannot be said that a state wide consideration of land values, based upon true cash value, was not intended. It must be kept in mind that the many separate tax units of this state together form the state unit, and the changing of any of the small units, either up or down, without regard to its effect upon the unit of which it is a part, would naturally be supposed to affect uniformity and equality. The State Board of Tax Commissioners is a state body having statewide jurisdiction in assessing property for taxation with the state as a unit for de-

termining uniformity and equality measured by the standard—true cash value—fixed by the legislature.

There is no evidence whatever showing that the order for reassessment of the real estate of North township was the result of an investigation of the appraised value of the real estate throughout the state for the purpose and with the view of determining any question of uniform and equal rate of assessment and taxation. As we read the evidence it is to the effect that no such investigation was made other than as between real estate owners of North township.

While the state board is one of the instrumentalities provided by the state charged with the duty of determining uniformity and equality of assessment, 5-7. yet its jurisdiction is circumscribed by legislative regulations. *Fesler, Aud.,* v. *Bosson, supra,* p. 496; *State Board of Tax Comm.* v. *Belt R., etc., Co.* (1921), 191 Ind. 282, 130 N. E. 641. But, it may be said that the foregoing proviso authorizes the state board, at its discretion, not only to order a reassessment of real estate in any taxing unit however small it may be, but likewise the real estate of any individual. Those who insist upon this construction overlook the statewide character of §152. This section first provides in no uncertain language that, after 1922, real estate shall be assessed every four years. There can be no doubt about this provision being statewide or that the 1922 assessment shall stand, "Provided, however, that if in the discretion of the state board of tax commissioners it shall be deemed necessary, in order to maintain an equitable and just valuation, that real estate be assessed oftener than every four years," then the board may order, etc. In this connection, it may be well to remember that, "A proviso in a statute is to be strictly construed and limited to the objects fairly within its terms." *Simpson* v. *State, ex rel.* (1912), 179 Ind.

196, 201, 99 N. E. 980. Let it be assumed that this proviso is intended to take special cases out of a general class or to restrain the generality of that part of the statute which precedes it, still the language of the proviso in unmistakable terms cautions the state board not to disturb the equitable and just valuation of 1922 unless, in its discretion, it is necessary to do what? Maintain the equitable and just valuation already established on what? The real estate otherwise to be assessed every four years. There is no reason for saying that the word "maintain" was not used by the legislature in its ordinary and generally accepted sense, that is to say, "To hold in an existing state or condition; keep in existence or continuance; preserve from lapse, decline, failure, or cessation." Century Dictionary; "To hold or preserve in any particular state or condition; keep effective and from falling, declining, or ceasing; support." Standard Dictionary. Any other construction of this statute giving the state board authority to order a reassessment of the real estate in a single township, city, or of an individual, without reference to a statewide revision of assessments at that time, we would suggest, without expressing an opinion, might raise the question of whether or not it was inhibited by the constitutional provisions which require a uniform and equal rate of taxation, and guarantee equal privileges and immunities to all. Art. 10, §1 and Art. 1, §23, Constitution of Indiana. But the construction we have given it avoids the question of its constitutionality.

We conclude that the legislature intended by the proviso in question, that the state board should keep vigilant watch over real estate values, keeping in mind only the state as a unit. We therefore hold that the finding of the trial court is not sustained by the evidence and, for that reason, it is contrary to law.

Judgment reversed, with instructions to the court below to sustain appellant's motion for a new trial, and for further proceedings not inconsistent with this opinion.